UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON GOODE,
*Plaintiff*,

v.

HELENA MORRIS,
*Defendant.*

No. 3:22-cv-1016 (VAB)

**RULING AND ORDER ON EMERGENCY MOTION FOR EQUITABLE RELIEF**

Jason Goode ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"), has filed a pro se Complaint against Helena Morris ("Defendant"), a Psychiatric Advanced Practicing Registered Nurse ("APRN") employed by the Connecticut Department of Correction ("DOC").

Mr. Goode asserts claims under 42 U.S.C. § 1983 for deliberate indifference to his medical needs and cruel and unusual punishment based on APRN Morris's alleged discontinuation of Mr. Goode's prescribed psychiatric medication and his placement in solitary confinement. Compl., ECF No. 1.

Mr. Goode has filed an emergency motion for equitable relief, in which he seeks an order requiring APRN Morris to resume Mr. Goode's psychiatric medication and to transfer Mr. Goode from prolonged solitary confinement to a less restrictive housing environment. Pl.'s Emergency Mot. for Equitable Relief at 2, ECF No. 9 ("Mot."). APRN Morris opposes Mr. Goode's motion. Def.'s Resp. to Pl.'s Emergency Mot. for Equitable Relief, ECF No. 18 ("Opp'n").

Mr. Goode has filed various other motions, including a motion to appoint counsel, ECF No. 4, a motion for an order of service, ECF No. 21, a motion to amend the Complaint, ECF No. 22, and a Motion for Default Entry, ECF No. 23.

For the following reasons, Mr. Goode's emergency motion for equitable relief is **DENIED**.

Mr. Goode's motion for an order of service is **DENIED** as moot.

Mr. Goode's motion to appoint counsel is **DENIED without prejudice**.

Mr. Goode's motion for default entry is **DENIED without prejudice**.

Mr. Goode's motion to amend the Complaint is **GRANTED**.

The Clerk of Court is respectfully directed to docket the Amended Complaint filed with Mr. Goode's motion. ECF No. 22-1.

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A. Factual Allegations

Mr. Goode alleges that he has been diagnosed with various mental health conditions, including anti-social personality disorder and intermittent explosive disorder (IED), which is characterized by infrequent episodes of impulsive, aggressive, and violent behavior or verbal outbursts. Compl. ¶ 6; Mot. at 9.[1]

In either 2018 or 2019, an APRN employed by DOC allegedly prescribed the antipsychotic medication Seroquel to treat Mr. Goode's IED. Compl. ¶ 7.

On April 12, 2022, Mr. Goode allegedly met with APRN Morris to discuss his treatment. *Id.* ¶ 8. According to the Complaint, she asked him how he was functioning with Seroquel, and Mr. Goode responded that he sometimes conditioned himself to believe that the medication was

---

[1] Where a document has internal page numbers that differ from the ECF-generated page numbers, the ECF-generated page numbers are used.

a placebo, given the nature of the environment in which Mr. Goode had been confined for the past seven years. *Id.* ¶ 8–9. In response, APRN Morris allegedly snapped that she did not agree with Mr. Goode's characterization of the medication and stated that she was permanently discontinuing Mr. Goode's Seroquel prescription, despite Mr. Goode's objections. *Id.* ¶ 10.

According to Mr. Goode, he has never been prescribed any alternative medication for his IED or other mental health conditions. *Id.* ¶ 11. He also alleges that APRN Morris has acknowledged that he needs behavioral modification therapy, but that no such treatment is available in solitary confinement. Mot. at 9. Furthermore, Mr. Goode alleges that the discontinuation of the Seroquel prescription has made his behavior more volatile and caused him to engage in "assaultive behavior" towards correctional staff. Compl. ¶ 12. This behavior, in turn, has allegedly resulted in punitive discipline. *Id.*

In an affidavit filed in response to Mr. Goode's motion, APRN Morris states that she began treating Mr. Goode in July 2021. Morris Aff. ¶ 5, ECF No. 18-1. According to APRN Morris, Mr. Goode was already taking Seroquel, although he was often non-compliant with the Seroquel prescription and with his scheduled and requested therapy. *Id.* ¶ 6–7. APRN Morris agrees with Mr. Goode that she continued prescribing Seroquel until April 12, 2022. *Id.* ¶ 7. At that time, she states that she discovered Mr. Goode was hoarding the Seroquel. *Id.* ¶ 8. According to APRN Morris, Mr. Goode stated that the hoarding was "just a game" to him and that the medication was not providing any benefit other than as a placebo. *Id.*

As a result, APRN Morris states, "I discontinued the Seroquel at that time because in my clinical judgment, I do not believe it was providing clinical benefit." *Id.* ¶ 9. She further states that the risk of continued administration outweighed any potential benefit. *Id.*

3

In response to Mr. Goode's allegations about the availability of other treatment options, APRN Morris states that she encouraged "the continuation of behavioral management/modification through continued mental health therapy" by the clinicians at MacDougall and that Mr. Goode has been offered regular one-on-one treatment with psychologists and clinical social workers. *Id.* ¶¶ 10–11. According to APRN Morris, however, Mr. Goode's participation in the offered therapy has been inconsistent and sporadic. *Id.* ¶ 12.

### B. Procedural History

On August 7, 2022, Mr. Goode filed his Complaint, seeking damages and injunctive relief for violating his Eighth Amendment rights. Compl.

On August 9, 2022, Mr. Goode filed a motion to appoint counsel. Pl.'s Mot. for Appointment of Counsel, ECF No. 4.

On August 26, 2022, Mr. Goode filed an emergency motion for equitable relief. Mot.

On September 23, 2022, the Court directed that Mr. Goode's Complaint and emergency motion for equitable relief be mailed to the Connecticut Attorney General's office and requested that the Attorney General's office (1) consult with APRN Morris; and (2) file a response to Mr. Goode's motion within 20 days of their receipt of the request. Order, ECF No. 11.

After obtaining extensions of time to file a response, APRN Morris responded to Mr. Goode's motion on October 21, 2022. Opp'n; *see also* First Mot. for Extension of Time, ECF No. 13 (Oct. 4, 2022); Order, ECF No. 14 (Oct. 5, 2022) (granting first motion for extension of time); Second Mot. for Extension of Time, ECF No. 15 (Oct. 17, 2022); Order, ECF No. 16 (Oct. 18, 2022) (granting second motion for extension of time).

On October 31, 2022, Mr. Goode filed a motion for an extension of time until November 6, 2022, to file a reply in support of his motion for emergency injunctive relief, which the Court granted the following day. Mot. for Extension of Time, ECF No. 21; Order, ECF No. 20.

On November 1, 2022, Mr. Goode filed a motion for order of service, asking the Court to direct APRN Morris to mail a copy of her response to Mr. Goode. Pl.'s Mot. for Order of Service, ECF No. 21.[2]

On November 9, 2022, Mr. Goode filed a motion to amend his Complaint. Pl.'s Mot. to Amend, ECF No. 22.

On December 9, 2022, Mr. Goode filed a motion for default entry based on APRN Morris's failure to respond to the motion to amend. Pl.'s Mot. for Default Entry, ECF No. 23.

## II.   STANDARD OF REVIEW

### A.   Emergency Motion for Equitable Relief

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). To prevail, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

---

[2] To date, Mr. Goode has not filed a reply in support of his motion for emergency injunctive relief. On October 21, 2022, defense counsel certified in the response to Mr. Goode's motion that he mailed a copy of the response to Mr. Goode at MacDougall, Opp'n at 9, although Mr. Goode stated in his November 1 motion that he had not received a copy of the response, Pl.'s Mot. for Order of Service at 2. Because the Court determines that any reply from Mr. Goode could not establish that he is entitled to preliminary injunctive relief, the Court deems the emergency motion for equitable relief to be fully briefed. *See* D. Conn. L. Civ. R. 7(d) ("Reply memoranda are not required and the absence of a reply memorandum will not prejudice the moving party."); *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). Accordingly, the Court will deny as moot Mr. Goode's motion for an order of service.

injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (internal quotation marks omitted).

"[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.*, the situation that existed between the parties immediately prior to the events that precipitated the dispute." *Asa v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010); *see also Transamerica Rental Fin. Corp. v. Rental Experts*, 790 F. Supp. 378, 381 (D. Conn. 1992) ("It is well established in this Circuit that the purpose of a preliminary injunction is to preserve the *status quo* between two parties."). "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League, LLC v. U. S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quoting *N.Y.C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)). "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)).

A district court has "wide discretion in determining whether to grant a preliminary injunction." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)). The Supreme Court repeatedly has stated that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

### B. Motion to Appoint Counsel

Civil litigants, unlike criminal defendants, do not have a constitutional right to the appointment of counsel. *See Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case."). Rather, district judges have "[b]road discretion" as to the appointment of counsel in civil proceedings. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). However, the Second Circuit has "caution[ed] [district courts] against routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989); *see also Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997) ("[D]istrict judges should not mistakenly read our discussion in *Hodge* as an invitation to appoint counsel indiscriminately just because an indigent litigant makes such a request." (internal quotation marks and citation omitted)).

## III. DISCUSSION

### A. Emergency Motion for Equitable Relief

To prevail on an Eighth Amendment claim for deprivation of medical care, a plaintiff must prove two elements: (1) a deprivation that is "sufficiently serious" because it presents a "a condition of urgency . . . that may produce death, degeneration, or extreme pain," and (2) deliberate indifference, which is established when "the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a

7

substantial risk to the detainee's health." *Charles v. Orange County*, 925 F.3d 73, 86, 87 (2d Cir. 2019). Thus, to obtain the mandatory preliminary injunction sought in this case, Mr. Goode must show a "clear or substantial likelihood" of establishing these two elements. *N.Y.C.L. Union*, 684 F.3d at 294 (internal quotation marks omitted).

Mr. Goode argues that he is likely to succeed on the first prong because the deprivation of his Seroquel prescription has caused him mental anguish and resulted in "turbulent responses to provocations" that have led to the imposition of "cruel and unusual punishment discipline and additional criminal citations/charges." Mot. at 11. He contends that he is likely to succeed on the second prong because APRN Morris was aware of the nature of Mr. Goode's IED and of the "substantial risk" that could result from the discontinuation of his medication. *Id.* at 12. Mr. Goode also argues that he has established a likelihood of irreparable harm and that the balance of hardships weigh in his favor. *Id.* at 12–14.

APRN Morris argues that Mr. Goode was not deprived of medical care because she acted "reasonably in response to an inmate-health risk," as the Eighth Amendment requires. Opp'n at 6–7. She argues that she provided the appropriate medical care given Mr. Goode's presentation and her professional judgment that the medication was not providing a clinical benefit. *See id.* at 8. Because she reasonably applied her medical judgment, APRN Morris contends, she was not deliberately indifferent under the second prong of the Eighth Amendment analysis. *Id.*

The Court agrees.

As APRN Morris notes, correctional officials "who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (alteration in original). Moreover, "mere disagreement over the proper treatment" will not support an Eighth Amendment claim as

long as the treatment provided is "adequate." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Here, Mr. Goode seeks a mandatory injunction requiring APRN Morris to resume his Seroquel treatment. *See McKenna v. Wright*, No. 01 CIV. 6571 (WK), 2002 WL 338375, at *4 (S.D.N.Y. Mar. 4, 2002) (applying the standard for mandatory injunctions because "Plaintiff asks us to order Defendants to provide him with a treatment which the defendant physicians have already rejected on the basis of their medical judgment"). Thus, he must show a clear or substantial likelihood that APRN Morris's conduct was unreasonable.

Mr. Goode cannot make this showing on the record before the Court. APRN Morris's affidavit states that she discontinued Mr. Goode's Seroquel treatment because, in her medical judgment, it was not providing a clinical benefit. *See* Morris Aff. ¶ 9. She states that Mr. Goode was found to be hoarding the medication, and that Mr. Goode himself stated that the medication had no effect other than that a placebo. *Id.* ¶ 8. In his Complaint, Mr. Goode alleged that he "sometimes conditioned himself as believing [Seroquel] as a placebo to [e]nhance effectiveness." Compl. ¶ 9. Mr. Goode has offered no basis for concluding that APRN Morris's exercise of her professional judgment in response to his presentation was unreasonable. The Court will not order a correctional official to provide medical treatment that the official reasonably believes will have no clinical benefit. *See Hodge v. Sidorowicz*, No. 10 CIV. 428 (PAC) (MHD), 2011 WL 6778524, at *9 (S.D.N.Y. Dec. 20, 2011) ("[T]he nature of the injunctive relief sought by plaintiff—a directive to provide specific forms of treatment—would be wholly inappropriate. Plaintiff offers no basis for this court to determine . . . the preferred course of treatment, and the court is in no position to second-guess the professional judgments of the

prison's medical staff . . . ."), *report and recommendation adopted sub nom. Hodge v. Wladyslaw*, 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012).

Similarly, Mr. Goode has not made a clear or substantial showing that APRN Morris was deliberately indifferent to his medical needs when she discontinued the Seroquel prescription. Mr. Goode correctly points out that APRN Morris was aware of his IED. She believed, however, that discontinuing the Seroquel would not have an adverse effect on Mr. Goode because she did not think that the medication was providing any medical benefit. Mr. Goode cannot clearly establish that this belief amounted to deliberate indifference.

APRN Morris's purported failure to replace the Seroquel with another treatment also cannot establish the required likelihood of success on the merits. Because, in her judgment, the Seroquel was providing no clinical benefit, "it was not worth the risk of continued administration." Morris Aff. ¶ 9. Thus, from APRN Morris's perspective, there was no need to replace any purported benefit Seroquel was providing, and the treatment was discontinued in the interest of Mr. Goode's health. *See McKenna*, 2002 WL 338375, at *6 ("[T]he physicians examined his medical condition and determined, pursuant to their medical judgment, that treating Plaintiff's Hepatitis C with such therapies as Interferon and Ribavirin would endanger Plaintiff's health rather than improve it . . . [I]n refusing to treat him with Interferon and Ribavirin, the physicians acted pursuant to their medical judgment . . . to protect Plaintiff's health.").

Furthermore, APRN Morris stated in her affidavit that she "encouraged the continuation of behavioral management/modification" through continued therapy offered by clinicians at MacDougall. Morris Aff. ¶ 10. She also stated that Mr. Goode has been offered "regular one on one treatment with psychologists and clinical social workers and treatment as requested by Mr.

Goode." *Id.* ¶ 11. In light of these statements, Mr. Goode cannot make a clear or substantial showing that he is being entirely denied treatment for his mental health conditions.

Accordingly, Mr. Goode has not met his heavy burden of showing that he is likely to succeed on the merits of his Eighth Amendment claim, and the Court will deny his request for an order requiring APRN Morris to resume his Seroquel prescription.

Mr. Goode also seeks an order requiring that he be moved from solitary confinement to a less restrictive housing environment or that his classification status be adjusted to a less restrictive one. In his motion, Mr. Goode offers no basis for this requested relief other than the inadequacy of the treatment available in solitary confinement. *See* Mot. at 15–17. For the reasons set forth above, Mr. Goode has not made the required showing that the discontinuation of his Seroquel amounts to constitutionally inadequate treatment.

Additionally, Mr. Goode has not established that he has standing under Article III to seek this relief against APRN Morris, the only defendant in this case. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). A plaintiff has standing to sue over an alleged injury only if "a favorable decision by a court will redress the injury." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 103 (2d Cir. 2018). In her affidavit, APRN Morris states that she has no control "over the conditions of confinement for inmates at any correctional facility" and is "not involved in the decision to place or maintain inmates on Administrative Segregation status." Morris Aff. ¶ 3. These statements show that APRN Morris could not implement an order from the Court to transfer Mr. Goode out of solitary confinement.

Accordingly, Mr. Goode has not established standing to seek such an order in this lawsuit.

### B. Motion to Appoint Counsel

At this time, the Court has not yet issued an Initial Review Order under 28 U.S.C. § 1915A determining whether any of Mr. Goode's claims are cognizable and state a claim upon which relief may be granted. Thus, appointment of counsel would be premature. *See Glover v. HPC-Eight*, No. 20-CV-01535 (VAB), 2021 WL 6694599, at *3 (D. Conn. Apr. 16, 2021) (denying without prejudice a motion to appoint counsel because, at the time, the Court was "faced with several threshold legal issues," including "whether Ms. Glover's Complaint has sufficiently stated a claim upon which relief can be granted").

Accordingly, Mr. Goode's motion to appoint counsel will be denied without prejudice.

### C. Motion for Default Entry

Mr. Goode moves for default entry under Federal Rule of Civil Procedure 55 based on APRN Morris's failure to respond to Mr. Goode's motion to amend his Complaint. Pl.'s Mot. for Default Entry ¶ 2. Although APRN Morris has appeared in this case, as directed by the Court, to respond to the emergency motion for equitable relief, the Court has not issued an Initial Review Order or directed APRN Morris to respond to the Complaint or the Amended Complaint. Thus, APRN Morris is not in default for failure to plead under Rule 55.

Accordingly, Mr. Goode's motion for default entry will be denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Mr. Goode's emergency motion for equitable relief is **DENIED**.

Mr. Goode's motion for an order of service is **DENIED** as moot.

Mr. Goode's motion to appoint counsel is **DENIED without prejudice**.

Mr. Goode's motion for default entry is **DENIED without prejudice**.

Mr. Goode's motion to amend the Complaint is **GRANTED**.

The Clerk of Court is respectfully directed to docket the Amended Complaint filed with Mr. Goode's motion. ECF No. 22-1.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of December, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE