UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jason Goode, Plaintiff | Case no. 3:22-cv-01016 (VAB) |
| v. | |
| Helena Morris, Defendant | November 8, 2022 |

## Introduction of
## Proposed Amended Complaint

1. This is a §1983 civil complaint filed by imprisoned pro se Plaintiff, Jason Goode, asserting violations to his federal Constitutional Eighth Amendment Rights to be provided (psychiatric) medicine for a serious medical need; discontinuing that health service and leaving the Plaintiff in the most psychological & emotionally adverse correctional environment — solitary confinement — for his pre-existing mental health conditions; violation to Plaintiff's rights pursuant to 42 U.S.C. § 12132

(ADA, Title II), § 504 of the Rehabilitation Act and C.G.S. § 46a-69 and § 46a-77(c) all concerning Defendant's failure to make reasonable accommodations for mental health services and permanently discontinuing plaintiff from a service or program in discrimination of his mental health condition and thus causing a life havoc effect to Plaintiff's carceral life and endangering those about him. Defendant is thus being sued in her official capacity(ies) under the Rehabilitation Act, Title II of the ADA for both injunctive & monetary relief & the Eighth Amendment in her official capacity for injunctive relief & for monetary relief in her individual capacity.

## Jurisdiction

2. The Plaintiff, Jason Goode, was (and is) at all times relevant a prisoner confined at the Walker building of the MacDougall Walker Correctional Institution in Suffield Connecticut at the time this violation occurred.

5. Defendant Morris is an Advanced Nurse Practioner Contracted by the Connecticut Department of Correction. As such she is responsible for treatment and/or health care services to individuals including assessments, treatments, diagnosing, medical conditions, assessing emergencies, ordering, analyzing and interpreting results of diagnostic studies, prescribing medication and monitoring responses to medications and adjusting accordingly inter-alia. At all times relevant She was acting under the color of law. She is being sued in both individual and official capacities.

## Factual Statement

6. Plaintiff is diagnosed with various mental health conditions; among them: Anti-social personality disorder and Intermittent Explosive Disorder (I.ED), which is characterized by infrequent episodes of impulsive, aggressive violent behavior

3

and/or verbal outbursts in which one reacts grossly out of proportion to a situation, according to the Diagnostic And Statistical Manual of Mental Disorders, (DSM-IV-TR), 4th Edition.

7. Within the years of either 2018 or 2019, Plaintiff was prescribed the medication of Seroquel by a Department of Correction Advance Nurse Practioner for his mental health condition of IED.

8. Occurring on April 12, 2022 the Plaintiff was called to meet with Defendant Morris. During this health encounter with Defendant, Plaintiff was asked questions about how he was functioning with the medication of Seroquel.

9. Plaintiff responded the best he could given the conditions of the Environment (i.e. solitary confinement) to which he was subjected to and sometimes conditioned himself as believing it as a placebo to inhance the effectiveness (or the

medication) given the nature of the
Environment Plaintiff had been in for
the previous seven years

10. In response to Plaintiff's communication,
Defendant Morris verbally snapped that
she was not in agreement with this
innovation and stated that she was
permanently discontinuing Plaintiff's medi-
cation of Seroquel; despite Plaintiff's
Objections.

11. At that time nor any time after,
did the Defendant prescribed the Plaintiff
any alternative for psychiatric disability
of I.E.D.

12. Since the discontinuation of plaintiff's
medication of Seroquel, Plaintiff has
been ever more violatile in his
psychiatric symptomatic conduct of
punching his cell walls to cause
swelling to his Knuckles whenever
provoked; having been chained-up for
hours, having Engaged in assaultive

5

behavior toward correction staff and thus
being punitively disciplined and criminally
charged for such conduct as well as
being disciplined for threatening language which
is a product of plaintiff's other mental
health condition of Anti-Social Personality
Disorder, referrenced to in the DSM-IV

## Causes of Action

13. Defendant Morris actions of having
discontinued, permanently, plaintiff's
psychiatric medication and having not
prescribed the Plaintiff an alternative
medication, well knowing his mental
health condition, constituted deliberate
indifference to a serious mental health
need, thus subjecting the Plaintiff and
others about him to precarious cir-
cumstances and therefor, violating
Plaintiff Eighth Amendment rights
under the United states Constitution
to be free from cruel and unusual
punishment

14. The Defendant has, Knowingly, failed make any reasonable modifications/accommodations to mental health services, nor informed CTDOC custody staff of the Plaintiff's need for a more therapeutic treatment.

15. The Defendant's failure to make reasonable accommodations/modifications to mental health services leave's the Plaintiff in the least integrated setting, which is inappropriate for the Plaintiff's disability needs.

16. The Defendant's inactions violates the Plaintiff's rights under 42 U.S.C. § 12132 (ADA, Title II), §504 of the, Rehabilitation Act and Conn. Gen. Stat §§ 46a and 46a-77(c). The Plaintiff pursues these claims against the Defendant in her official capacity

## Exhaustion of Administrative Remedies

Plaintiff has exhausted his health

ssevices remedies to the hilt. See
attached Exhibit no. 1

RELIEF REQUESTED

A. Issue an injunction requiring Defendant to
recommence appropriate psychiatric medication

B. Award compensatory damages for mental
and emotional and physical injuries (i.e.
internal tremors, chest tightness, depress-
ions, palpations, ect. associated with
plaintiff's mental disorder of I.E.D.)
Wrist indentations and the cutting-off-
of-blood circulation from intentionally
misapplied handcuffs to plaintiff's wrists
and swelling of knuckles in the sum
$50,000.00 to Plaintiff in Defendant's
individual capacity, under the Eighth
Amendment

C. Award punitive damages in the
amount of $100,000.00 to Plaintiff for
Defendant reckless indifferent conduct

D. Order that Defendant make required recommendations or orders to have Plaintiff removed from solitary confinement to an appropriate setting for his mental needs such as a Special Needs classification status or the Whiting forensic hospital — that which is consistent and compatible with paragraph 5(d) of Executive Order 21-1, Exhibit, no. 2 and that merely reflects her statement made in the final paragraph of her reply to Exhibit no. 1

E. Award compensatory damages to Plaintiff pursuant to 42 U.S.C. § 12132, Title II of the Americans With Disabilities Act and §504 of the Rehabilitation Act in Defendant official capacities.

F. Order that all of Plaintiff's statutory goodtime credits and privileges be restored in relation to the incidents/disciplinary reports he recieved over the discontinuation of his medication

B. Order that the Defendant (and others of her profession) incorporate behavioral modifications such as the full return of Plaintiff's personal Electronic appliances (i.e. radius, CDs, CD player, TV, Ect.), psychiatric programming and unstructed out-of-cell time consistent with the "Position statement" of the American Psychiatric Association (see Exhibit no.3) whenever Plaintiff is on a D.O.C. restrictive housing status

H. Plaintiff request a jury trial, should one be needed.

Respectfully submitted by Plaintiff this
_____ 8th day of November, 2022

Plaintiff

Jason Gould #228240
MWCI
1153 East St. South
Suffield, CT 06080

10

# Health Services Administrative Remedy- Level 1
## Connecticut Department of Correction

CN 8901

EXHIBIT
NO. 1

| ☑ Facility/Unit: Walker | Date: 4-2022 |
|---|---|
| ~~Inmate~~ Prisoner Name: Jason Gude | ~~Inmate~~ Number: 228740 |

## Section 1: FILING A HEALTH SERVICES ADMINISTRATIVE REMEDY LEVEL 1

Prior to filing a request for Health Services Administrative Remedy, an inmate must attempt informal resolution. Attach a copy of the CN 9601, Inmate Request form, with the staff member's response or explain in Section 3 why the form is not attached.

Health Services Administrative Remedies must be filed within 30 days of the occurrence or discovery of the cause of the concern.

Reason for Health Services Administrative Remedy. Check the appropriate box:
☑ Diagnosis/ Treatment ☐ Administrative

## Section 2: OTHER REQUIREMENTS FOR USING THE HEALTH SEVICES ADMINITRATIVE REMEDY PROCEDURE

Read and comply with the instructions below, then complete Section 3 (State the Problem and Requested Resolution)

- The length of this request shall be restricted to the space available in Section 3 and one (1) additional 8 1/2 x 11-inch page.
- This request for a Health Services Administrative Remedy must be free of obscene or vulgar language or content.
- This request for a Health Services Administrative Remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- Informal resolution attempts and responses shall be attached or explained if no attachment is available.
- A repetitive request for a specific Health Services Administrative Remedy will be rejected if
    a. a final response has already been provided;
    b. there has been no change in any circumstances that would affect the response; and
    c. the initial request for the Health Services Administrative Remedy is still in process.

## Section 3: STATE THE PROBLEM AND REQUESTED RESOLUTION

Provide any factual information that is applicable. Including any responses from staff. State the action that you believe should be taken to resolve this problem. PLEASE PRINT. No informal Resolution available; however, I have taken step to write to Craig Burns on April 12, 2022 & to talk with mental health staff (Eva) on 4-18-22. On 4-12-22 I met with APRN Morrison, who stated to me that she was discontinuing my seroquel medication after I disclosed to her that this AIS environment was counterproductive to most of the medication effectiveness & that I tend to attempt to enhance whatever medication effectiveness as using placibo effects for it. This APRN did not attempt to prescribe any alternative medications for my Diagnosis of Intermittent Explosive Disorder when I suggested it to her. Since the discontinuation of this med. I feel more ~~aggressive~~, combative and more & risk for damaging a person. (Bring on whatever disciplinary action for discontinuing my medication & have me placed on another medication for my Disorder.

# Health Services Administrative Remedy- Level 1
## Connecticut Department of Correction

CN 8901
Rev.
05/06/2021

| Inmate Signature: | Date: 4-20-22 |
|---|---|

Deposit the completed form in the <u>Health Services Administrative Remedies box</u>

### Section 4: Decision/Official Use ONLY- Do Not Write in the Space Below

| Date Received: 4/20/22 | HSAR# 137/114, 1823-22 |
|---|---|
| Disposition: DENIED | Date: 4/27/22 |

**Reason:** Staff responses must be printed or typed. Language must address both the problem and requested solution

Inmate started on Seroquel 2021 by another prescriber. He stated it was started for his Explosive D/O.

During period of being on medication he has not been all adherence to medication. He is found to hoard them in a cup and blaming it on not having a cleaner cell hence no clean water to take medication. He had refused medication at times because he did not like nurses who are passing medication.

Inmate statement of taking medication for his diagnosis of explosive disorder apparent differ because it has not helped him as he had acquired about 81 tickets since being on Seroquel 1/12 years ago. This shows that inmate needs behavior modification, which studies have proven to be the case better than medications.

On my last encounter with inmate, inmate reports that he only takes Seroquel for Placebo effects and as long as he is in DOC/AS environment medication will not work. Inmate is correct on this statement as his behavior cannot be medicated away and therefore risk of taking Seroquel is higher. At this point medication is not indicated.

## Health Services Administrative Remedy Decision

| ☑ This decision is not subject to further appeal | ☐ This matter may be appealed within 5 calendar days |
|---|---|
| Staff Name Print: Helena Morris | Title: APRN |
| Signature: Helena Morris APRN | Date: 4/27/22 |

EXHIBIT NO.
1

**APA Official Actions**

# Position Statement on Segregation of Prisoners with Mental Illness

Retained by the Board of Trustees, December 2017
Retained by the Assembly, November 2017

Approved by the Board of Trustees, December 2012
Approved by the Assembly, November 2012

"Policy documents are approved by the APA Assembly and Board of Trustees. . . These are . . . position statements that define APA official policy on specific subjects. . ." – *APA Operations Manual*

**Position:**

Prolonged segregation of adult inmates with serious mental illness, with rare exceptions, should be avoided due to the potential for harm to such inmates. If an inmate with serious mental illness is placed in segregation, out-of-cell structured therapeutic activities (i.e., mental health/psychiatric treatment) in appropriate programming space and adequate unstructured out-of-cell time should be permitted. Correctional mental health authorities should work closely with administrative custody staff to maximize access to clinically indicated programming and recreation for these individuals.

© Copyright, American Psychiatric Association, all rights reserved

STATE OF CONNECTICUT

BY HIS EXCELLENCY

NED LAMONT

EXECUTIVE ORDER NO. 21-1

**WHEREAS,** the Constitution of the State of Connecticut and the Constitution of the United States dictate that the State should deliver a standard of treatment of incarcerated people consistent with evolving community standards; and

**WHEREAS,** the United Nations' Nelson Mandela Rules provide that isolated confinement of 22 hours or more per day may not be used for a period exceeding fifteen days, and that isolated confinement may be used only in exceptional cases and only as a last resort; and

**WHEREAS,** states around the country have acted through legislation or administrative policy to reduce the use of isolated confinement and eliminate prolonged isolate confinement;

**WHEREAS,** national and international nongovernmental organizations recommend alternatives to use of isolated confinement as a population management tool; and

**WHEREAS,** the State of Connecticut has taken substantial steps to reduce the use of isolated confinement by, among other steps, closing Northern Correctional Institution; and

**WHEREAS,** the Department of Correction administers all jails and prisons in the state; and

**WHEREAS,** reducing the use of isolated confinement and eliminating prolonged isolated confinement can produce better outcomes for incarcerated people and the staff responsible for their supervision; and

**WHEREAS,** increased opportunities for contact visits will keep incarcerated people connected to their families and communities, and reduce recidivism rates by helping people to flourish after reentering the community; and

**WHEREAS,** reducing the use of in-cell restraints will ensure the highest respect for the human dignity of incarcerated people;

**NOW, THEREFORE, I, NED LAMONT,** Governor of the State of Connecticut, by virtue of the authority vested in me by the Constitution and the laws of the State of Connecticut, do hereby **ORDER AND DIRECT:**

1. As used in this Order:

   a. "Disciplinary status" means a status in which restrictions are imposed on an incarcerated person due to such person's behavior, either pending or following a disciplinary hearing;
   b. "Extraordinary circumstances" means a serious incident resulting in a lockdown of a substantial portion of a correctional facility;
   c. "General population" means any status other than a restrictive status program;
   d. "Isolated confinement" means confinement of an incarcerated person in a cell, alone or with others, for twenty or more hours per day;
   e. "Prolonged isolated confinement" means isolated confinement for more than fifteen consecutive days or more than thirty days in any sixty-day period; and
   f. "Restrictive status program" means a Department of Correction program other than disciplinary status with restrictive rules involving multiple phases with progressively increased privileges, including, but not limited to, administrative segregation, chronic discipline, and security risk group.

2. By September 1, 2021, the Department of Correction shall guarantee that, outside of extraordinary circumstances, incarcerated persons in the general population shall be held in isolated confinement only due to disciplinary status.

3. By October 1, 2021, the Department of Correction shall guarantee that, outside of extraordinary circumstances:

   a. Any incarcerated person in isolated confinement shall have a meaningful opportunity to be out of such person's cell for two hours each day; and
   b. No person shall be held in prolonged isolated confinement due to disciplinary status.

4. By December 1, 2021, the Department of Correction shall guarantee that, outside of extraordinary circumstances:

   a. Incarcerated persons, including those in restrictive status programs, shall be held in isolated confinement only due to disciplinary status;
   b. No person shall be held in prolonged isolated confinement.

5. By October 1, 2021, the Department of Correction shall make policy changes to limit the use of isolated confinement on members of vulnerable populations to the greatest extent possible. For the purposes of this paragraph, "member of a vulnerable population" means a person who:

   a. Is under eighteen years of age, or sixty-five years of age or older;
   b. Has a mental health needs score of four or five;
   c. Has a developmental disability, as defined in section 17b-28;
   d. Has a serious medical condition that cannot be effectively treated in isolated confinement;
   e. Is pregnant, is in the postpartum period, or has recently suffered a miscarriage or terminated a pregnancy; or
   f. Has a significant auditory or visual impairment.

6. By October 1, 2021, the Department of Correction shall report on steps taken and to be taken to increase access to contact visits for incarcerated persons.

7. By October 1, 2021, the Department of Correction shall report on steps taken and to be taken to decrease the use of in-cell restraints.

This order shall take effect immediately.

Dated at Hartford, Connecticut, this 30th day of June, 2021.

_____
Ned Lamont
Governor

By His Excellency's Command

_____
Denise W. Merrill
Secretary of the State

